**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JORDAN REYES<br>Plaintiff,<br><br>v.<br><br>CITY OF GALVESTON, TEXAS (GALVESTON POLICE DEPARTMENT)<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.___<br>**JURY** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Jordan Reyes complains of the City of Galveston, Texas (Galveston Police Department) and would respectfully show this Honorable Court as follows:

**I. Parties**

1. Plaintiff Jordan Reyes (hereinafter "Plaintiff") is a citizen of the United States and a resident of Galveston County, Texas.

2. Defendant City of Galveston, Texas (Galveston Police Department) ("Defendant") is a municipality formed and governed under the laws of the State of Texas.

3. Defendant may be served with process and a copy of Plaintiff's Original Complaint through its Mayor, John Paul Listowski, at 823 25th St, Galveston, TX 77550, or wherever he may be found.

## II. Jurisdiction & Venue

4. This action arises under a federal statute, Title 42 U.S.C. Section 2000e et. seq. (Title VII of the Civil Rights Act of 1964) and 42 U.S.C. Section 1981 as amended by Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race. Additionally, the district court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 (federal question). The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

5. Venue is properly before this Court under 28 USC § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III. Exhaustion of Administrative Procedures

6. All conditions precedents to jurisdiction have occurred or been complied with and a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of Equal Employment Opportunity Commission's issuance of a right to sue letter.

## IV. Facts and General Allegations

7. Plaintiff is a Mexican male of Hispanic/Latino descent.

8. Plaintiff was employed by Defendant as a police officer for four years where he achieved the position of detective.

9. In 2025, Plaintiff noticed that he was being treated differently than non-Hispanic officers. Plaintiff raised these concerns to superiors. In response Plaintiff was retaliated

against and ultimately terminated.

10. In May 2025, Plaintiff requested time off to attend his daughter's pre-k graduation. His Caucasian supervisor, Lt. Renee Ochoa, denied the request due to a mandatory meeting he was required to attend.

11. However, when at the meeting, Plaintiff noticed a Caucasian officer was granted permission to be off.

12. On May 20, 2025, Plaintiff went home sick. Plaintiff went to his primary care physician and submitted a work excuse, via email to Sgt. Robert Sanderson.

13. Though Plaintiff submitted a doctor's excuse, his Caucasian supervisor, Lt. Renee Ochoa, attempted to reprimand and transfer Plaintiff due to sick time abuse. Plaintiff had always provided documentation from his medical providers for missed work time. Regardless, Lt. Ochoa was still attempting to reprimand Plaintiff.

14. Shortly thereafter, Lt. Ochoa focused on Plaintiff and another Hispanic officer for allegedly not writing enough traffic citations. It is a violation of the Texas Transportation Code § 720.002 for Defendant to admonish Plaintiff and the other Hispanic officer for a lack of writing traffic citations.

15. Therefore, Plaintiff's Caucasian supervisor was placing pressure on him and the other Hispanic officer to violate Texas Transportation Code 720.002. Non-Hispanic officers were not subjected to the same verbal admonishment regarding the Transportation Code or pressured to violated it.

16. Concerned, on May 21, 2025, Plaintiff went to the Chief of Police and Asst. Chief. Plaintiff complained that his supervisor was treating him and another Hispanic officer differently than non-Hispanic coworkers.

17. On May 30, 2025, Plaintiff followed his complaint up in a meeting with his supervisor Sgt. Robert Sanderson, informing him of the Defendant's conduct. Plaintiff's complaint included being called a "wetback" and "Mexican Mafia."

18. These comments were made by Caucasian officers in front of Sgt. Sanderson. He was well aware of the racial comments. Nevertheless, Sgt. Sanderson took no action. This included failing to report such conduct to Defendant's Human Resources Department ("HR").

19. Defendant has implemented and maintains workplace policies that make such reporting mandatory.

20. On June 3, 2025, Plaintiff meet with Lt. Ochoa, Capt. Xavier Handcock, Defective Tony Rogers, and the Asst. Chief regarding the negative racial environment he was dealing with at work.

21. After the meeting, Plaintiff emailed his complaint directly to the Asst. Chief.

22. The Asst. Chief had a meeting with Plaintiff's supervisor about the treatment of Hispanic officers. But the discriminatory conduct by Defendant did not cease but got worse.

23. On June 6, 2025, Plaintiff made a complaint to his superiors Sgt. Robert Sanderson and Lt. Renee Ochoa that a Caucasian officer was engaging in sexual activities with a civilian in a police vehicle while on duty (potentially a criminal act of Official Oppression).

24. On June 17, 2025, the Asst. Chief and Human Resources requested that Plaintiff withdraw his complaint. Plaintiff did not withdraw the complaint.

25. In response, on June 25, 2025, Plaintiff was served with notice of an Internal Affairs Investigation ("IA Investigation") being lodge against him for an allege body-cam and wrecker rotation violations. However, the notice-letter did not state specifically what the allegations were that were being lodged against Plaintiff.

26. On July 14, 2025, Plaintiff met with HR about his work situation and Defendant's conduct. Plaintiff informed HR about the discriminatory and retaliatory conduct he was dealing with at work.

27. At the meeting Plaintiff also expressed concerns he had regarding the Official Oppression complaint he made and how it was being handled regarding the Caucasian officer.

28. On the same day, Plaintiff emailed his complaint to HR.

29. Two days later, on July 16, 2025, Plaintiff was put on notice that a second IA Investigation was being lodged against him for an escort violation. Plaintiff believes that the Chief of Police initiated this allegation. It was clear at this point that both IA Investigations lodged against Plaintiff were in retaliation for him making complaints including the complaint about the Caucasian officer participating in alleged Official Oppression.

30. Therefore, on July 17, 2025, Plaintiff made a retaliation complaint against the Chief of Police.

31. Five days later, on July 22, 2025, Plaintiff was put on leave pending the IA Investigation(s) pending against him.

32. The other Hispanic officer was also placed on administrative leave pending an investigation.

33. Oddly enough, other Caucasian officers who were being investigated for the same allegations that were lodged against Plaintiff were not put on leave pending investigation.

34. This included Sgt. Robert Sanderson (Caucasian), Brandly Stroud (Caucasian), Mathew Whiting (Caucasian), and Jocab Easly (Caucasian).

35. One of the alleged reasons for the IA investigation against Plaintiff concerned an escort violation. However, Caucasian Officer Jocab Easly had an escort violation and he was

not subjected to an IA Investigation.

36. Plaintiff was again being treated differently due to his race.

37. While out on leave, Plaintiff was notified he was being terminated for body-cam violations.

38. The other Hispanic officer was also terminated.

39. However, the Caucasian officers (Sgt. Robert Sanderson, Brandly Stroud, Mathew Whiting, and Jocab Easly) who were found to have body-cam violations were not terminated.

40. But it was clear the termination was Defendant's continued discriminatory conduct and in retaliation for Plaintiff making a race complaint and a complaint against a Caucasian officer. Especially considering the other Hispanic officer was put on leave pending the same investigation and also terminated.

## V. Title VII – Race (Hispanic/Mexican) Discrimination and Retaliation Claims

41. Plaintiff incorporates paragraphs 1 – 40.

42. Because of his race (Hispanic/Mexican), Plaintiff was subjected to treatment differently than other similarly situated employees.

43. When Plaintiff requested time off, it was declined as he was instructed to attend a mandatory meeting. However, another Caucasian employee (Officer Bradley Stroud) was granted leave and excused from the mandatory meeting.

44. It was during this time period that Plaintiff's Caucasian supervisor moved to reprimand him for absenteeism abuse. But Plaintiff always submitted a doctor's excuse upon his return to work. Plaintiff was being harassed.

45. Plaintiff and another Hispanic officer were pulled aside and orally admonished for not writing enough traffic citations.

46. This was odd as the City of Galveston does not have any type of quotas in place

regarding issuing traffic citations. Plaintiff was not aware of any monthly or yearly responsibility for writing a specific number of citations.

47. Plaintiff found this admonishment offensive and alarming considering that Texas law prohibits such quotas from being implemented by a municipality. Texas Transportation Code § 720.002.

48. Texas Transportation Code § 720.002(a) specifically indicates that a municipality is prohibited from:

> establish or maintain, formally or informally, a plan to evaluate, promote, compensate, or discipline:
>
> (1) a peace officer according to the officer's issuance of a predetermined or specified number of any type or combination of types of traffic citations….

49. Defendant approaching and admonishing Plaintiff about the number of traffic citations that he wrote (or lack thereof) was not only improper but illegal.

50. Therefore, Plaintiff inquired about such a policy during this meeting for clarity. But nothing was provided to support Defendant's claim that two Hispanic officers were failing to meet their job responsibilities.

51. Non-Hispanic officers were not orally admonished regarding the lack of writing a specific number of traffic citations.

52. Concerned with how he was being treated and being pressured to violate the Texas Transportation Code, Plaintiff made a discrimination complaint. The complaint included Plaintiff being referred to as "wetback" and "Mexican Mafia."

53. The racial slurs were not just stray remarks, but remarks that Plaintiff was subjected to several times over the course of a work week.

54. The remarks were even made in front of Plaintiff's supervisor Sgt. Robert Sanderson.

55. But no investigation ensued to ascertain the validity of Plaintiff's complaint and/or any alleged investigation conducted was pretext to disguise Defendant's discriminatory

and retaliatory conduct.

56. Sgt. Robert Sanderson failed to follow Defendant's workplace antidiscrimination policy and mandatory report such conduct.

57. Additionally, no investigation was conducted at all regarding Defendant admonishing Plaintiff in violation of Texas Transportation Code § 720.002 which was a clear violation of the law to pressure a police officer to meet a certain threshold of written traffic citations.

58. A few days after making his complaint, Plaintiff made another complaint regarding a Caucasian officer participating in what Plaintiff perceived as Official Oppression.

59. Plaintiff meet with Defendant regarding the Official Oppression compliant.

60. Instead of investigating, Defendant requested that Plaintiff withdraw his complaint. Plaintiff did not withdraw his complaint.

61. As a result of his complaints, Defendant initiated Internal Affairs investigations against Plaintiff. This included Plaintiff being put on administrate leave pending the investigation.

62. However, non-Hispanic officers being investigated for the same allegations were not subjected to leave. This included officers, Sgt. Robert Sanderson (Caucasian), Brandly Stroud (Caucasian), Mathew Whiting (Caucasian), and Jocab Easly (Caucasian).

63. While on leave, Plaintiff was informed he was being terminated.

64. Plaintiff was treated differently than other similarly situated employees who were not Hispanic.

65. Plaintiff participated in a protected activity and was subjected to adverse employment actions by Defendant. Defendant retaliated against Plaintiff by punishing him. This included Plaintiff being the subject of more than one IA investigation, being placed on leave, and ultimately terminated. Pursuant to *Muldrow v. City of St. Louis, Missouri, 144 S.Ct. 967(2024),* Plaintiff was left worse off.

66. By retaliating against Plaintiff, Defendant violated his protected rights pursuant to 42 U.S.C. Section 2000e.

67. Defendant treated Plaintiff in a manner that deprived Plaintiff of an equal employment opportunity that was provided to other similarly situated non-Hispanic employees in violation of 42 U.S.C. Section 2000e-2 (a).

68. Plaintiff alleges that Defendant discriminated against Plaintiff on the basis of race and retaliated against Plaintiff with malice or with reckless indifference to the statutory protected rights of Plaintiff in violation of 42 U.S.C. Section 2000e. Plaintiff is entitled to punitive damages.

**VI. 42 U.S.C. § 1981 and 1983 - Race Discrimination and Retaliation Claims**

69. Plaintiff incorporates Paragraphs 1 – 68.

70. "But for" Defendant's conduct, Plaintiff was racially discriminated against. This racial discriminatory action specifically resulted in:

a. Plaintiff's time-off request to attend his daughter's graduation was denied due to an alleged mandatory meeting while another non-Hispanic officer was not required to attend the mandatory meeting.

b. Plaintiff and another Hispanic officer were admonished for their failure to issue an unknown number of monthly traffic citations while non-Hispanic officers were not admonished or directed to write a specific amount of traffic citations. This admonishment was in direct violation of the Texas Transportation Code§ 720.002.

c. Defendant pressured Plaintiff and another Hispanic officer to

violate Texas Transportation Code § 720.002.

d. Being subjected to racial slurs such as “wetback” and “Mexican Mafia.”

e. Facing a reprimand for allegedly violating Defendant’s absentee policy.

f. Plaintiff having his complaints ignored and/or a pretext investigation conducted.

g. Plaintiff making discrimination and retaliation complaints (including a complaint about a non-Hispanic officer potentially engaging in Official Oppression). This resulted in Plaintiff being subjected to two IA investigations.

h. Plaintiff being placed on administrative leave pending the IA investigations while non-Hispanic officers facing the same allegation of workplace misconduct were allowed to stay on duty and report to work.

i. Defendant terminating Plaintiff’s employment (and the other Hispanic Officer’s employment).

71. This conduct impacted Plaintiff’s ability to maintain, enforce, and enjoy the terms and benefits of his employment in direct violation of 42 U.S.C. Section § 1981.

72. Regarding 1981 retaliation, Plaintiff participated in a protected activity and was subjected to adverse employment actions by Defendant. Defendant retaliated against Plaintiff by punishing Plaintiff. Plaintiff was subjected to two IA investigations, put on administrative leave pending the IA investigation while non-Hispanic officers charged with the same allegation were allowed to continue to report to work, and Plaintiff was terminated. Pursuant

to *Muldrow v. City of St. Louis, Missouri, 144 S.Ct. 967(2024),* Plaintiff was left worse off.

73. Defendant's conduct of subjecting Plaintiff to adverse employment actions constitutes retaliation in violation of 42 U.S.C. Section 1981.

74. Plaintiff alleges that Defendant retaliated against him with malice or with reckless indifference to the statutory protected rights of Plaintiff in violation of 42 U.S.C. Section 1981. Plaintiff is entitled to punitive damages.

75. Plaintiff alleges that Defendant discriminated against him due to his race with malice or with reckless indifference to the statutory protected rights of Plaintiff in violation of 42 U.S.C. Section § 1981. Plaintiff is entitled to punitive damages.

76. Plaintiff asserts the rights secured by 42 U.S.C. § 1981 against the governmental Defendant through the remedial framework of 42 U.S.C. § 1983. Section 1981 guarantees the equal right to make and enforce contracts without discrimination on the basis of race, including the making, performance, modification, and termination of contractual relationships and the enjoyment of all benefits, privileges, terms, and conditions of those relationships.

77. Pursuant to *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), and *Oden v. Oktibbeha County*, 246 F.3d 458 (5th Cir. 2001), Section 1983 provides the exclusive federal remedy for violations of Section 1981 committed by state actors.

78. Accordingly, Plaintiff seeks relief under Section 1983 for the governmental Defendant's violation of the substantive rights guaranteed by Section 1981.

## VII. Damages

79. Plaintiff incorporates paragraphs 1 – 78.

80. As a direct and proximate result of Defendant's violations of law, Plaintiff suffered and continues to suffer emotional/mental anguish.

81. As a further direct and proximate result of Defendant's violations of law, Plaintiff has been compelled to retain the services of counsel in an effort to protect his rights, and has incurred, and will continue to incur, legal fees, and cost, the full nature and extent of which are presently unknown to Plaintiff. Plaintiff requests that attorney's fees, cost, and expenses

(including but not limited to expert witness' fees) be awarded pursuant to all applicable laws.

## VIII. Punitive/Exemplary Damages

82. Plaintiff would further show that the acts and/or omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of Plaintiff. In order to punish said Defendant for engaging in unlawful employment practices and to deter such actions and/or omissions in the future, Plaintiff also seeks to recover exemplary damages from Defendant.

## IX. Jury Demand

83. Plaintiff hereby requests a trial by jury.

## X. Prayer

84. Wherefore, Plaintiff prays that Defendant be cited to appear and answer and that upon trial of this matter, Plaintiff be awarded the following:

a. Compensatory damages;
b. Back and front pay;
c. Reinstatement (if feasible);
d. Past and future mental anguish;
e. Past and future actual damages;
f. Past and future economic damages;
g. Nominal damages;
h. Exemplary damages;
i. Attorney's fees;
j. Expert's fees;
k. Court costs;
l. Pre-judgment interest at the highest rate allowed by law;
m. Post-judgment interest at the highest rate allowed by law; and
n. All other relief to which Plaintiff is entitled.

Respectfully submitted,

**Thomson Dunkel Law, PLLC**

By: *<u>/s/ Charles P. Dunkel, Jr.</u>*
Charles P. Dunkel, Jr.
State Bar No. 24034427
Ashley N. Thomson
State Bar No. 24097908
2600 South Shore Blvd, STE 300
League City, TX 77573
Telephone: 281.738.3448
Email: *cdunkel@tdunklaw.com*
Email: athomson@tdunklaw.com
**ATTORNEYS FOR PLAINTIFF**